NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SEABOARD SURETY COMPANY, Plaintiff, v. MARY ANN NIEDERHAUSER, Defendant. | Civ. No. 04-2814 (AET) MEMORANDUM OPINION |

THOMPSON, U.S.D.J.

## I. Introduction

This matter comes before the Court on Plaintiff Seaboard Surety Company's Motion for Summary Judgment and Defendant Mary Ann Niederhauser's Cross-Motion for Summary Judgment, on a claim for indemnification under a surety contract. The Court has considered the submissions of the parties without oral argument pursuant to Fed. R. Civ. P. 78. For the following reasons, the Court grants Plaintiff's Motion for Summary Judgment and denies Defendant's Cross-Motion for Summary Judgment.

## II. Background

Defendant was appointed trustee for a trust established by the will of decedent Constance Carbaugh Scillitani. The beneficiary of the trust was decedent's son, Samuel J. Scillitani (the "Beneficiary"). The will was probated in the Surrogate's Court of the State of New York, County of New York on or about April 29, 1985. Under the terms of the trust, Defendant was to

pay the trust's income to the Beneficiary, with the distribution of one-half of the principal when the Beneficiary turned 30, and distribution of the rest of the principal when the Beneficiary turned 35.

Plaintiff is a surety company. On May 1, 1985, Defendant executed and submitted an "Application for Fiduciary Bond" (the "Application") to Plaintiff in relation to her duties as trustee. In the Application, Defendant agreed to several provisions, including an indemnity provision, for the express purpose of inducing Plaintiff to execute a surety bond on Defendant's behalf. Under the indemnity provision, Defendant promised to

> at all times indemnify and keep indemnified the Surety and hold and save it harmless from and against any and all liability, loss, costs, damages, attorneys' and counsel fees, and disbursements and expenses of whatever kind or nature the Surety may sustain or incur by reason or in consequence of having executed or procured the execution of, the bond hereinabove applied for.

In addition, Defendant promised that

> [i]f the Surety shall prosecute any suit(s), action(s), and/or proceeding(s) to enforce any of the covenants herein contained, the Indemnitor agrees to pay the costs, charges and expenses, including attorneys' fees and disbursements incurred, all of which shall be included in any judgment(s) and/or decree(s), that may be rendered against the Indemnitor.

Based on the representations in the Application, Plaintiff executed a "Bond of Trustee" (the "Bond") on behalf of Defendant as principal, in the amount of $500,000. The Bond was filed in the Surrogate's Court in New York County. The Bond was conditioned on Defendant's faithful discharge of her duties as trustee. If Defendant fulfilled those duties, then her obligations under the Bond would be void.

In early 2001, the Beneficiary filed a lawsuit in Louisiana state court against Defendant

and her employer, Fahnestock & Company, Inc. ("Fahnestock"), alleging that Defendant had breached her fiduciary duties by (1) failing to send him accountings; (2) failing to pay him half of the trust principal when he turned 30; and (3) wrongfully depleting the assets of the trust. The Beneficiary did not make Plaintiff a party to the Louisiana action, but through a letter dated February 19, 2001, he informed Plaintiff that he was asserting a claim against the Bond. The Beneficiary's claim against the Bond was based on the same allegations of Defendant's breach of fiduciary duties as in the Louisiana action. On or about March 8, 2001, Plaintiff wrote a letter to Defendant asking for a statement of Defendant's position on the Beneficiary's claim against the Bond. Plaintiff received no response. Plaintiff thereafter wrote several more letters to Defendant asking for information regarding the Beneficiary's claim, but continued to receive no response. After Plaintiff's letter of September 25, 2001, a representative of Plaintiff spoke to Defendant, but Defendant did not offer any defenses to the Beneficiary's claim. Plaintiff became concerned that Defendant was not actively defending her interests in the Louisiana lawsuit. Defendant had delayed hiring an attorney to represent her in her capacity as trustee, and when her attorney later withdrew due to nonpayment, she did not retain new counsel.

Plaintiff retained counsel in Louisiana to investigate and monitor the lawsuit. Plaintiff's Louisiana counsel found that the trust held approximately $430,000 when it was established, but had a balance of $10,382.94 when it was supposed to terminate in 1999. Between 1985 until 1999, the trust was charged $242,463 in commissions to Fahnestock and $165,551.44 in margin interest. Defendant had received 40% of the commissions, in the approximate amount of $96,985.20. The Beneficiary's expert and Fahnestock's expert found that although the trust had generated income of about $113,488.97 to $116,675.42 over the trust period, expenses generated

from margin trading created an overall net loss ranging from $13,435.32 to $32,866.56. Fahnestock's expert estimated that if Defendant had invested in income producing securities rather than trading on margin, the overall net income would have ranged from $553,000 to $585,000. Based on the investigation, Plaintiff's Louisiana counsel concluded that Plaintiff would be liable on the bond for its full amount ($500,000). Relying on this conclusion, Plaintiff entered into a settlement with the Beneficiary and Fahnestock, whereby Fahnestock and Plaintiff each paid the amount of $240,000 to the Beneficiary. The settlement was executed in January 2004.

Plaintiff also retained counsel in New York. Plaintiff's New York counsel filed a verified petition on or about February 6, 2002 in Surrogate's Court in New York, seeking a judgment that Plaintiff had no obligation under the Bond until a final accounting by Defendant, and also for an accounting by Defendant. Following a conference with the Surrogate's Court judge on March 19, 2002, Defendant was given 120 days to submit a final accounting. Defendant filed a voluntary petition for accounting on or about July 31, 2002.

On or about June 10, 2004, Plaintiff sent Defendant a letter requesting that Defendant indemnify Plaintiff under the terms of the covenants and agreements made in the Application. Defendant did not comply with the request for indemnification. Thereafter, Plaintiff filed the instant case in this Court on June 15, 2004.

## III. Discussion

Plaintiff argues that summary judgment should be granted in its favor under the terms of the Application. Defendant argues that summary judgment should be granted in her favor for two reasons: (1) Plaintiff was not liable on the Bond until the Surrogate's Court in New York

made a finding that Defendant was liable, and (2) Plaintiff cannot get a recovery from Defendant because Plaintiff voluntarily settled the Beneficiary's claim against the bond.

A. Choice of Law

Because this case is being litigated in the District of New Jersey, New Jersey choice of law rules apply. NL Indus., Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 316 (3d Cir. 1995). In New Jersey, courts apply the law of the state with the "most meaningful connections with and interests in the transaction and the parties." Id. at 319. In cases involving contracts, "the law of the place of contracting should ordinarily be applied unless some other state has the 'dominant relationship' with the parties and issues." Id. Here, the contractual agreement involves a trustee bond executed and filed with the Surrogate's Court in New York County. No other state has a more dominant relationship with the parties and issues in this case than New York. Accordingly, the Court will apply New York law to interpret the contractual terms of the Application.

B. Whether a Finding of Liability Is Required Before Indemnification

Under New York law, the indemnification agreement controls a principal's obligation to the surety. See U.S. Fid. & Guar. Co. v. Feibus, 15 F. Supp. 2d 579, 583-84 (M.D. Pa. 1998); Frontier Ins. Co. v. Renewal Arts Contracting Corp., 12 A.D.3d 891, 892 (N.Y. App. Div. 2004). In Continental Casualty Co. v. National Slovak Sokol, Inc., the New York Court of Appeals interpreted an indemnification provision very similar to the one in the Application. 269 N.Y. 283, 288 (1936). In that case, the surety executed a bond conditioned on the principal's adherence to the Alcoholic Beverage laws. When a claim was made on the bond, the surety settled and paid the claim. Thereafter, the surety brought suit against the principal for indemnification. The New York Court of Appeals found that the indemnification provision

allowed the surety to be indemnified even though there had been no judgment entered concerning the principal's liability. Id. at 288-89.

Accordingly, Defendant's argument that Plaintiff first must obtain a judgment of liability before being indemnified is misguided because the indemnity agreement controls Defendant's obligation to Plaintiff. Defendant mistakenly relies upon cases that involve parties wishing to have their claims paid by a surety, rather than a surety seeking indemnity from its principal. See United States v. Westchester Fire Ins. Co., 478 F.2d 133, 138 (2d Cir. 1973); see also In re Nat'l City Bank of N.Y. v. Nat'l Sur. Corp., 274 N.Y. 600 (1937); Cent. Hanover Bank & Trust Co. v. Nat'l Sur. Corp., 274 N.Y. 579 (1937).

The Court also rejects Defendant's suggestion that Plaintiff be barred from opposing Defendant's argument that a judgment of liability is required before indemnification. Plaintiff did rely on a similar line of reasoning in its case before the Surrogate's Court of New York, but no evidence was presented to show that Plaintiff prevailed in this position. See New Hampshire v. Maine, 532 U.S. 742, 749 (2001).

C. Indemnification of a Voluntary Settlement

In Continental Casualty, the New York Court of Appeals also noted that a surety could not agree to settle an unwarranted liability. See 269 N.Y. at 289-90. Correspondingly, at least one court has announced the rule that a "party that pays a claim it is not obligated to pay is a volunteer and may not recover those expenses." Gen. Ins. Co. of Am. v. K. Capolino Constr. Corp., 903 F. Supp. 623, 626 (S.D.N.Y. 1995). But cf. Frontier Ins. Co., 12 A.D.3d at 892-93 (finding that volunteer rule was misapplied in Capolino). That court derived the volunteer rule from two New York cases, National Union Fire Insurance Co. v. Ranger Insurance Co., 190

A.D.2d 395 (N.Y. App. Div. 1993), and Fidelity & Casualty Co. of N.Y. v. Finch, 3 A.D.2d 141 (N.Y. App. Div. 1957). These two cases applied the volunteer rule to sureties who paid claims on liabilities that were not expressly covered in their indemnification agreements.

In National Union Fire Insurance Co., an insurance company defended and settled a shopping center slip-and-fall case for its insured even though it discovered that its policy specifically excluded coverage for shopping centers. 190 A.D.2d at 396. Based on the volunteer doctrine, the court did not permit the insurance company to recover its settlement payment from its insured's other insurance company, whose policy did cover shopping centers. Id. at 397-98.

On the other hand, in Fidelity & Casualty Co., the surety had issued bonds to the state of New York to cover any sums that the County Clerk failed to account for and pay over to the state. 3 A.D.2d at 143. When the County Clerk failed to account for and pay over a sum of $27,113.53, the surety paid that amount over to the state and filed an action against the County Clerk. Id. The court found that the surety was not a volunteer because it "acted pursuant to a reasonable determination that it was liable" based on the records that showed that the County Clerk had failed to pay over funds. Id. at 145-46. As a result, the surety "was not required to resort to litigation in order to assure its right of subrogation against [the County Clerk]." Id. at 146.

The circumstances in the case at hand are more similar to Fidelity & Casualty Co. than to National Union Fire Insurance. Plaintiff and Defendant are contractually bound under the terms of the Application, which expressly provides that Defendant will "at all times indemnify and keep indemnified the Surety . . . for all liability, loss, costs, damages, attorneys' and counsel fees, and disbursements and expenses . . . sustain[ed] or incur[red] by reason or in consequence of

having executed or procured the execution of, the bond hereinabove applied for." The bond was conditioned on Defendant's faithful discharge of her duties as trustee. The Beneficiary made a claim on the bond based on allegations that Defendant had breached her fiduciary duties. This is the type of claim that would be covered by the indemnification provision in the Application. See Feibus, 15 F. Supp. 2d at 583-84.

In addition, the Court finds that Plaintiff acted reasonably in paying the settlement. See In re John's Insulation, Inc. v. Hartford Accident & Indem. Co., 221 B.R. 683, 689 (E.D.N.Y. 1998) ("New York courts imply as a condition to recovery under an indemnification contract that the surety act reasonably or in good faith."). Plaintiff based its decision to settle the case on the expert reports commissioned by the Beneficiary and Fahnestock, and on Defendant's conduct. The two reports revealed that Defendant's actions caused the trust to lose value, and support Plaintiff's conclusion that it would be liable under its bond. In addition, Plaintiff has provided evidence that Defendant was not faithfully discharging her duties as trustee. Defendant did not respond in a timely fashion to Plaintiff's many letters requesting information regarding the Louisiana action, and also failed to file her accounting in accordance with the 120-day time limit ordered by the Surrogate's Court.

D. Summary Judgment Analysis

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). To survive a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

The Court finds that there is no genuine issue of material fact, and concludes that Plaintiff should be granted judgment as a matter of law. Defendant's arguments implicate legal issues, which the Court has resolved above in favor of Plaintiff. The Court notes that no evidence was submitted to counter the dilatory behavior of Defendant in her role as trustee, and that there was no showing that Plaintiff acted in bad faith when it settled the Beneficiary's claim.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment will be granted and Defendant's cross-motion for summary judgment will be denied. The accompanying order will be entered.

s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.

Dated: 4/5/06